1

```
 1                    UNITED STATES DISTRICT COURT
                       MIDDLE DISTRICT OF FLORIDA
 2                        JACKSONVILLE DIVISION

 3   UNITED STATES OF AMERICA,        Jacksonville, Florida

 4           Plaintiff,               Case No. 3:24-cr-137-HES-MCR

 5   -vs-                             December 3, 2024

 6   YAQUASIA DELCARMEN,              11:04 a.m.

 7           Defendant.               Courtroom 5C

 8

 9              DIGITALLY RECORDED MOTION HEARING
            BEFORE THE HONORABLE MONTE C. RICHARDSON
10                UNITED STATES MAGISTRATE JUDGE

11

12                      A P P E A R A N C E S

13   GOVERNMENT COUNSEL:

14       Aakash Singh, Esquire
         Kirwinn Mike, Esquire
15       U.S. Attorney's Office
         300 North Hogan Street, Suite 700
16       Jacksonville, FL  32202

17
     DEFENSE COUNSEL:
18
         Eric Roper, Esquire
19       Law Office of Eric Roper, PA
         301 West Bay Street, Suite 1413
20       Jacksonville, FL  32202

21
     OFFICIAL COURT REPORTER:
22
         Shelli Kozachenko, RPR, CRR, CRC
23       221 North Hogan Street, #185
         Jacksonville, FL  32202
24       Telephone:  (904) 301-6842

25              (Proceedings recorded by electronic sound recording;
                         transcript produced by computer.)
```

P R O C E E D I N G S

December 3, 2024                                                11:04 a.m.

- - -

COURT SECURITY OFFICER: All rise. United States District Court in and for the Middle District of Florida is now in session, the Honorable Monte C. Richardson presiding.

Please be seated.

THE COURT: We're here in Case No. 3:24-cr-137, the United States of America versus Yaquasia Delcarmen.

And who speaks for the United States?

MR. SINGH: Good morning, Your Honor. Aakash Singh on behalf of the United States.

THE COURT: Welcome, Coun- -- oh.

MR. MIKE: Kirwinn Mike on behalf of the United States, and to my left is Agent John O'Keefe for Homeland Security.

THE COURT: Welcome, Counselors.

And for defense?

MR. ROPER: Good morning, Your Honor. Eric Roper on behalf of Ms. Delcarmen.

THE COURT: Mr. Roper, welcome as well, sir.

We're scheduled this morning to hear a motion to modify conditions of release filed by the defendant in this case.

Mr. Roper, let me hear from you, sir.

1                  MR. ROPER:  Yes, Your Honor.

2                  May I approach?

3                  THE COURT:  Yes, sir.

4                  MR. ROPER:  Thank you, Your Honor.

5                  Your Honor is exactly correct.  We are scheduled to

6      hear the defense motion, which was document 45, which is a

7      motion to modify one particular term of Ms. Delcarmen's

8      supervised release.  I think the Court is also probably aware

9      that we are scheduled for sentencing next Wednesday before

10     Judge Schlesinger.

11                 And after consultation with Ms. Delcarmen, I -- my

12     motion today is to ask the Court for permission to withdraw our

13     previously filed motion, document 45, and strike that from --

14     or withdraw that motion.

15                 THE COURT:  Okay.  So you're moving to withdraw your

16     motion to modify conditions of release.

17                 MR. ROPER:  Yes, sir.

18                 THE COURT:  All right.  Any objection from the United

19     States?

20                 MR. SINGH:  No objection, Your Honor.

21                 THE COURT:  All right.  So we're done.

22                 MR. SINGH:  Your Honor, there is one more matter.

23                 In the response motion that the United States filed,

24     which is docket No. 48, we responded in opposition to the

25     defense motion for modifying conditions of release, but our

```
 1  last paragraph was a request for the Court to hear the issue of
 2  whether or not the defendant has already violated pretrial
 3  conditions.  And I would --
 4            THE COURT:  I read that, yes.
 5            MR. SINGH:  -- just ask to be heard on that.
 6            THE COURT:  All right.
 7            MR. SINGH:  May I approach, Your Honor?
 8            THE COURT:  Yes, sir.
 9            MR. SINGH:  Your Honor, on June 27, 2024, the
10  defendant entered a plea of guilty before this Court.  The two
11  counts of conviction were a drug conspiracy of 50 kilograms or
12  more of marijuana, and the second count was a money laundering
13  conspiracy.
14            It pertained to conduct that the Court is well aware
15  of through the other defendants in this case, but it was a drug
16  conspiracy that went on for about two years.
17            Your Honor, when the defendant was arrested on a
18  criminal complaint in the spring of 2024, the charges on the
19  complaint were the drug conspiracy, as well as witness
20  tampering.  She was complainted, arrested, and eventually
21  waived information -- waived indictment and filed an
22  information, which is why we're here.
23            Judge Barksdale heard the matter on the complaint and
24  gave the defendant conditions of release over the government's
25  objection.  7(b) of those conditions of release were that the
```

1  defendant was not to either have direct or indirect contact
2  with Mr. Nathaniel Hatcher except through counsel.
3          Your Honor, when the defendant filed the motion that
4  was just withdrawn, the United States and its agents went back
5  to just do a review to see whether or not the defendant had
6  violated those conditions already.
7          And what we found, Your Honor, was that -- and I've
8  spoken to defense counsel.  Defense counsel mentioned that it
9  was okay if I proffer this, but I just want to confirm that
10 that's still okay if I proffer it.
11         MR. ROPER:  Yes, sir.
12         MR. SINGH:  Okay.  We found that -- the Homeland
13 Security investigative agents that had this case found dozens
14 and dozens of instances, since the defendant's release up until
15 now, in which she has had direct and indirect contact with the
16 defendant, in violation of condition 7(b).
17         These communications typically took place through the
18 defendant -- or, I'm sorry, through Defendant Hatcher's
19 recorded jail system.  Defendant Hatcher would contact a phone
20 number that was associated with Ms. Delcarmen's sister, Secoya
21 Delcarmen.
22         The way we know that, Your Honor, is on the HomeWAV
23 detention center system, when somebody is placing an outgoing
24 call, the number that they're calling has to be registered with
25 the facility, along with the identifiers of who that person is,

1  as well as a scanned copy of their driver's license.
2          So when we look at it, we're able to see the number
3  belongs to Secoya Delcarmen, and the photograph on the license
4  is that of Secoya Delcarmen's.
5          When agents looked at the individual video calls and
6  studied them in detail, we observed that on numerous
7  occasions -- in July of 2024 and in August of 2024, September
8  2024, and then again in October of 2024, on multiple occasions
9  Ms. Delcarmen, not her sister, was on these video calls with
10 the defendant, Mr. Hatcher.
11         Some of these calls were regarding information in the
12 case.  Other communications were completely, you know, not --
13 not about the case.  They were just random communications.
14         And so I'm not alleging that all of these
15 communications were obstructive in nature or anything of the
16 sort, but there were certainly communications between the two
17 of them in violation of the conditions.  Some of these
18 communications did revolve around the case.
19         And that brings us to a larger concern, which is the
20 defendant has not followed with the conditions of release set
21 by Judge Barksdale.  The violations, we think, are significant
22 mostly -- for two reasons:  (a) the type of violation,
23 communication with somebody that you've been ordered not to
24 communicate with who just happens to be the lead defendant, but
25 also the volume, consistency, and frequency of these violations

```
 1  are egregious.
 2           For those reasons, Your Honor, I would argue that (a)
 3  the defendant has violated her conditions of release.  I would
 4  also argue that -- again, I would just reiterate the United
 5  States' position that there are no combination of conditions
 6  that would reasonably assure this defendant will follow the
 7  conditions, will appear for court, or will not pose a danger to
 8  the community.
 9           The standard, I believe, Your Honor, under 18 U.S.C.
10  3148, is that the United States must show clear and convincing
11  evidence that the person has violated any condition of release,
12  and I believe, through this proffer, we have.
13           And therefore, Your Honor, I would ask that the Court
14  find that the defendant did violate her conditions and also
15  revoke her custody, Your Honor.
16           Thank you.
17           THE COURT:  Thank you, Mr. Singh.
18           Mr. Roper?
19           MR. ROPER:  Yes, Your Honor.
20           May I approach again?
21           THE COURT:  Yes, sir.
22           MR. ROPER:  Judge, most of the -- it sounds like the
23  allegations of the violations include her, Ms. Delcarmen,
24  having indirect or direct communication with Mr. Hatcher.
25           Again, it's important to note that this --
```

1  Mr. Hatcher is the father of Ms. Delcarmen's -- their child
2  together, who is about to be 11 months old.
3           And she -- she was aware of the conditions of her
4  release, obviously.  And the communications that were permitted
5  were for Mr. Hatcher to contact their child by these FaceTime
6  videos.
7           Ms. Delcarmen, as Mr. Singh noted, pled guilty to --
8  she waived indictment, pled guilty to an information.  She has
9  proffered several times.  She has cooperated fully.
10          This is her only violation that has been alleged in
11 the case.  And as I mentioned, she's set for sentencing next
12 Wednesday, and we are focused on preparing for that hearing.
13          None of the communications sound like they were in
14 any way nefarious in nature, that they were -- I heard that
15 there were allegations that the case was discussed in some
16 manner.
17          But predominantly these communications were related
18 to the health and well-being of their mutual son and were not
19 intended to or did, in fact, cause any kind of problems in the
20 prosecution of any of the remaining codefendants in the case.
21          So if the Court were inclined to find a violation in
22 this case, we would ask the Court to not remand her into
23 custody pending her sentencing hearing scheduled for next
24 Wednesday for those reasons, that she has been fully
25 cooperative and has, you know, continued to do that and

1  maintained that through her plea and will continue to do that
2  through her sentencing hearing on Wednesday.
3          Thank you, sir.
4          THE COURT:  Thank you, Mr. Roper.
5          MR. SINGH:  Your Honor, may I just briefly respond
6  with just some context also?
7          THE COURT:  Yes.
8          MR. SINGH:  I've just gotten information from the
9  agent, and I wanted to just clarify.
10         So in -- in -- there were communications, as I
11 mentioned before, where they talk about the case, one in
12 particular, on September 17, 2024, in which Ms. Delcarmen and
13 Mr. Hatcher discuss -- Hatcher essentially says that they are
14 using a workaround by, quote/unquote, talking to his son when
15 in reality he's talking with Ms. Delcarmen.
16         And Ms. Delcarmen admonishes him to please stop
17 talking about something, so -- so they were talking about the
18 case.
19         He does also then tell Ms. Delcarmen on this same
20 call, quote, "Stay silent and stay solid."  We have downloaded
21 this call, and we will turn it over to defense, obviously.
22 It's a large volume of calls that we had to download.
23         And that brings me to another point.  It's true, you
24 know, Ms. Delcarmen cannot initiate the contacts.  They have to
25 come from Mr. Hatcher.  The total number of communications that

1    we have from Mr. Hatcher going to that number associated with
2    Secoya Delcarmen is over 1800 during this time, Your Honor,
3    over 1800 calls.
4            Now, to be clear, mathematically, Ms. Delcarmen could
5    not answer all of those calls.  There is not enough hours in
6    the day to answer all of them, but a far number of them,
7    greater than half, were certainly answered by Ms. Delcarmen.
8    So --
9            THE COURT:  You're saying that Mr. Hatcher tried to
10   contact her 1800 times?
11           MR. SINGH:  I believe over 1800 times, Your Honor.
12   We -- the way -- the way it works is when you pull up on
13   HomeWAV, you can pull up an inmate.
14           Say you look at Bradford County Jail, and you select
15   Nathaniel Hatcher's list.  When that pops up, a sheet will
16   populate.  It's a spreadsheet.  The spreadsheet will have video
17   calls, voice calls, text messages, other sort of tablet
18   communications, all of which are monitored and reported.  That
19   total number, Your Honor, was above 1800.
20           So, again, not saying that Ms. Delcarmen answered
21   every single one of them.  I think it's mathematically
22   impossible to, but I think Mr. Hatcher is incessant, and he's
23   not going to stop.
24           And I think that at least on multiple occasions, at
25   least -- one, two, three, four -- at least seven occasions

1    between July and October, there were documented communications
2    between Ms. Delcarmen and Mr. Hatcher.
3            So, you know, whether it's nefarious or not, which I
4    think it still was -- I mean, discussing anything about the
5    case is something that she's been instructed not to do.  The
6    bigger question is she's been given -- she was given an order.
7    Against the government's objection, she was released on a
8    serious charge.
9            The complaint was witness tampering and drug
10   conspiracy.  She gets released, over our objection.  The one
11   thing that Judge Barksdale tells her she cannot do, amongst
12   other conditions, is, "You cannot talk to this person, who is
13   your boyfriend and the father of your child."
14           But Judge Barksdale doesn't say just that.  The order
15   says, "You can have contacts with this person through your
16   attorney," right?  So there is this medium through which --
17   it's not draconian.  The magistrate judge said, "Hey, I
18   understand you have to communicate with this person because you
19   have a child in common.  Use your attorneys.  You guys are both
20   pending criminal cases."
21           But the point is that Ms. Delcarmen is not -- did not
22   abide by that.  So even today the Court can release the
23   defendant on whatever conditions the Court thinks is
24   reasonable, but I don't think the defendant is going to care.
25   I don't think the defendant's going to change the behavior

1   because for the past several months, she hasn't.
2           And I -- I'm not here to remark on how difficult of a
3   situation she's in.  I'm a human.  I understand that she's in
4   one.  The analysis is just whether or not the defendant can
5   abide by conditions of release as issued by a court of law, and
6   she has failed to do so.  And I think that's it, Your Honor.
7           Thank you.
8           THE COURT:  Mr. Roper, anything else?
9           MR. ROPER:  No, Your Honor.
10          THE COURT:  Ms. Delcarmen, what do you have to say?
11          THE DEFENDANT:  The reason I came here today was to
12  have the motion filed so that I can legally speak with him,
13  because we have a son, and I just want him to know his dad.
14          As far as him calling, yes, he's made some calls and,
15  yes, there were times where I slipped up because it's just hard
16  not to when I don't have really anyone there 24/7 to mediate
17  between my son.  He's only ten months.  He can't talk.
18          The times that we did speak of things, I can't
19  exactly recall.  But I know that we're on a recorded line, so I
20  know that, you know, I'm not going to be talking about anything
21  that would harm me.
22          I do understand that I broke the rules, and I do
23  sincerely apologize.  I'm not taking this lightly or this case
24  lightly.  Like, it's -- it affects me a lot.  I just wanted to
25  be able to talk to him for my mental health, for my child, and

```
 1  for our stability.
 2          THE COURT:  Prior to this case being filed against
 3  you, and I was looking at your bail report -- and I don't think
 4  she had really any problems before that.
 5          Is that correct, Mr. Singh?
 6          MR. SINGH:  That's correct, Your Honor.
 7  Ms. Delcarmen does not have any felony convictions on her
 8  record.
 9          THE COURT:  It would appear, Ms. Delcarmen, that your
10  problem is Mr. Hatcher.  That's why you're here.  That's why
11  you're sitting in that chair.  And he's called you, according
12  to the United States, over, what was it, 1400 times trying to
13  make contact with you?
14          I understand the situation you're in.  I mean, you
15  are a mother, and you have a young child, and that's -- it's a
16  difficult situation to navigate.  Judge Barksdale issued
17  conditions of release under 7(b) that you're not to have
18  contact with Mr. Hatcher.  However, you could go through your
19  counsel.
20          You have admitted that you did violate 7(b).  You are
21  scheduled to be sentenced before Judge Schlesinger.  That
22  sentence -- sentencing is coming up shortly.
23          Mr. Singh has presented and made a strong case why
24  you should be remanded.  But I will find that you violated rule
25  7(b) and hope that before your sentence in front of Judge
```

Case 3:24-cr-00137-HES-MCR   Document 60   Filed 12/05/24   Page 14 of 15 PageID 239

14

```
 1   Schlesinger, that you demonstrate that you can abide by
 2   conditions.  It's to your benefit to do so, to show Judge
 3   Schlesinger that you can abide.
 4            So I will release you under conditions that are set,
 5   reaffirming the Court's admonition that you not have any
 6   contact, Ms. Delcarmen.
 7            Do you understand?
 8            THE DEFENDANT:  Yes, sir.
 9            THE COURT:  Do you understand?
10            THE DEFENDANT:  Yes, sir.
11            THE COURT:  If I hear any other violations between
12   now and sentencing, I instruct the U.S. Attorney's Office to
13   bring it to my attention, and you'll be back in this chair, and
14   there won't be any further conversation, right?
15            THE DEFENDANT:  Yes, sir.
16            THE COURT:  Anything else, Mr. Singh?
17            MR. SINGH:  Nothing further, Your Honor.
18            THE COURT:  Mr. Roper?
19            MR. ROPER:  No, sir.
20            THE COURT:  All right.  Court will be in recess.
21            COURT SECURITY OFFICER:  All rise.
22        (The proceedings were concluded at 11:21 a.m.)
23                              - - -
24
25
```

1       CERTIFICATE OF OFFICIAL COURT REPORTER
2
3
4   UNITED STATES DISTRICT COURT )
5   MIDDLE DISTRICT OF FLORIDA   )
6
7           I, court approved transcriber, certify that the
8   foregoing is a correct transcript from the official electronic
9   sound recording of the proceedings in the above-entitled
10  matter.
11
12          DATED this 5th day of December, 2024.
13
14                              s/Shelli Kozachenko_____
                                Shelli Kozachenko, RPR, CRR, CRC
15                              Official Court Reporter